KREZINSKI, Plaintiff-Appellant, v. HAY, and another, Defendants-Respondents.

*No. 75–295. Argued December 1, 1976.—Decided May 17, 1977.*
(Also reported in 253 N. W. 2d 522.)

For the appellant there were briefs by *Foley & Capwell, S. C.* and oral argument by *John Theiler Bode,* all of Racine.

For the respondents there was a brief by *C. James Heft* and *Heft, Dye, Heft & Paulson,* and oral argument by *C. James Heft,* all of Racine.

DAY, J.   The question in this action for damages for personal injury is whether Judith A. Krezinski (plaintiff) presented sufficient facts in opposition to Izetta L. Hay's and Milwaukee Mutual Insurance Company's (defendants) motion for summary judgment based on a release, to raise a triable issue of fact as to whether such

release executed by the plaintiff was the result of mutual mistake and hence voidable.

We hold based on this court's ruling in the case of *Doyle v. Teasdale*, 263 Wis. 328, 336, 57 N.W.2d 381 (1953) that an issue of fact is presented as to whether or not the release, admittedly signed by the plaintiff prior to bringing this action was the result of a mutual mistake of fact on the part of the plaintiff, the examining physician and the defendants.

The plaintiff brought action against Ms. Izetta Hay and her insurer for damages resulting from Ms. Hay's negligent operation of her automobile on State Trunk Highway 31 in Racine county on September 28, 1963. According to the complaint, the plaintiff was driving north on the highway when the defendant negligently drove her car onto the highway from a driveway causing the two automobiles to collide. The plaintiff alleged that she sustained injuries, "among others, traumatic epilepsy, contusions to scalp—occipito parietal area, cervical sprain and right dorsal myositis; numerous other abrasions, contusions and lacerations; severe pain and suffering, shock and mental anguish."

The defendants' answer denied negligent conduct and set forth various affirmative defenses, among which was that on September 5, 1969, the plaintiff, while represented by counsel, executed a release of all claims against the defendants, "in any way growing out of, any and all known and unknown personal injuries, developed or undeveloped, including death and property damage resulting or to result from an accident that occurred on or about the 28th day of September, 1968." The agreement acknowledged receipt by plaintiff of $2,300 as consideration for the release.

The plaintiff filed a reply admitting execution of the release but alleging she and the defendants relied and

acted upon a mutual mistake of fact. That mistake was their ignorance the plaintiff was suffering from a latent but present condition as a result of the accident which later manifested itself by grand mal epileptic seizures. This epileptic condition was not observed by plaintiff's physician prior to execution of the release.

The defendant moved for summary judgment on November 11, 1974. Affidavits in support of and opposition to the motion were filed. These affidavits set forth the plaintiff's medical history both before and after the collision. The trial court filed a memorandum decision in favor of the defendants on April 24, 1975 and summary judgment in favor of the defendants was entered May 16, 1975.

The rules concerning disposition of motions for summary judgment were recently stated in *College Mobile Home Park & Sales v. Hoffmann*, 72 Wis.2d 514, 521, 241 N.W.2d 174 (1976) as follows:

". . . Summary judgment is proper only where there is no material issue of fact and the question presented is solely one of law. If there is a dispute as to the material facts, if different inferences might be drawn from the facts, or if the application of the controlling law to the facts is uncertain, summary judgment should not be granted."

The detailed procedure to be followed by the trial court in such a case is also well established.

Initially it requires an examination of the pleadings to determine whether a cause of action has been stated and whether material issues of fact are presented. The allegations of the pleadings, however, may not be considered as evidence or other proof on a disposition of a motion for summary judgment. Assuming a cause of action and the existence of factual issues, an examination

is then made of the moving party's (defendants') affidavits and other proof to determine whether a prima facie defense has been established. If the moving party has made a prima facie case for summary judgment, an examination is then made of the opposing party's (plaintiff's) affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. *Peninsular Carpets, Inc. v. Bradley Homes, Inc.,* 58 Wis.2d 405, 410, 411, 206 N.W.2d 408 (1973), *Ricchio v. Oberst,* 76 Wis.2d 545, 551, 251 N.W.2d 781 (1977).

Under this procedure, the question is whether the plaintiff's affidavit and other proof reveal disputed material facts or undisputed material facts from which reasonable inferences may be drawn raising a triable issue concerning alleged mutual reliance upon a mistake of fact.

Releases will be set aside on the ground of mistake only where the mistake is mutual and not unilateral. *Doyle v. Teasdale, supra,* 263 Wis. at 336. The mistake of fact must be past or present "for it is obvious that the coming into existence of any future fact must at the time of contracting have been understood to rest in conjecture, and the contingency thereof to have been assumed by both parties." *Kowalke v. Milwaukee Electric Rwy. & Light Co.,* 103 Wis. 472, 79 N.W. 762, 764 (1899).

The seemingly all-inclusive language of the release before us is not dispositive of whether there was a mutual mistake of fact.

"(E)ven though a release expressly covers unknown injuries, it is not a bar to an action for such unknown injuries if it can be shown that such unknown injuries were not within the contemplation of the parties when the settlement was agreed upon; however, if the parties did in fact intentionally agree upon a settlement

for unknown injuries, such release will be binding. Whether the parties intended the release to cover unknown injuries is usually a question of fact." *Doyle, supra,* 263 Wis. at 346, quoting *Aronovitch v. Levy,* 238 Minn. 237, 56 N.W.2d 570 (1953).

In the *Doyle* case, *supra,* plaintiff had given a release based on a diagnosis of which in part was "sprained back." Subsequent to execution of the release, it was determined that the plaintiff had also injured the coccyx which had to be surgically removed. The question became whether there was a mutual mistake by the parties in relying on a diagnosis of sprained back when the plaintiff claimed that in fact his coccyx was fractured. This court in *Doyle* said at 263 Wis. 337:

"While the term 'sprained back' is broad enough to cover an injury confined solely to the ligaments of the coccyx, it would not include a fracture of any of the bones comprising the spine. Therefore in the instant case, where both parties entered into the settlement which was consummated by Doyle executing the release in reliance on the statement in the written medical report . . . that diagnosed the back injury as a 'sprained back,' there would be a mutual mistake of fact if it later developed that there was a bone fracture."

The case was returned to the trial court for findings as to whether or not the coccyx had in fact been fractured or merely sprained.

The nature and extent of a party's reliance on a mutually accepted medical diagnosis is a question of fact. If the diagnosis failed to ascertain a then-existing but unknown condition caused by the incident which led to the suit, and the parties relied on the diagnosis as the basis for settlement, the release may be set aside.

The plaintiff here submitted an affidavit that both she, and upon information and belief, the defendants, relied on a diagnosis of sustained contusions to the scalp,

occipito parietal area,[1] modest cervical sprain and right dorsal myositis.[2] She further claimed that after two weeks of treatment she felt clinically free of all symptoms and that re-examination as of July 21, 1969 showed no significant residual disability. She further represented to the court that the failure of her physicians to observe or find the condition which later gave rise to her seizures was a mistake of fact on the part of her physicians, the defendants and herself.

The defendants' own exhibits tendered in support of the motion included correspondence by Dr. G. Tsuchiya, summarizing a diagnosis made by the neurological clinic with which he was associated. This diagnosis was based on two examinations between the dates of the accident, September 28, 1968 and the execution of the release, September 5, 1969. The letter stated that on January 21, 1969, the plaintiff was "almost free of symptoms, except for occasional aching in the left temporal and vertex area." Additionally, her neurological examination was described as "normal." A July 21, 1969 report by Dr. Shack states, "re-examination on this date shows no significant residual disability." However on August 30, 1970 plaintiff suffered a major convulsive seizure, according to a deposition of Dr. Rafiullah. Plaintiff also had unrelenting headaches and seizures at least weekly and sometimes several times a week, according to the deposition. By April 1971, she was "seizure free" but had episodes of trembling.

The defendants also submitted the affidavit of Henry G. Krecklow, Vice-President-General Counsel of defendant Milwaukee Mutual Insurance Company. This affidavit described and incorporated deposition testimony

[1] Occipito—the back part of the head or skull; parietal—of or pertaining to the walls of an organ or cavity. Malloy, *Medical Dictionary For Lawyers* (1960).

[2] Myositis—Inflammation of a voluntary muscle. *Id.*

indicating plaintiff had been under medical treatment since November, 1959 for various reasons, including two prior accidents and a surgical removal of a growth in her head. This evidence, however, is immaterial at this stage of the litigation and the inferences drawn by the defendant from such evidence are defensive matters to be taken up on the trial of the merits.

The question here is whether the defendant raised a material issue of fact concerning an alleged mutual mistake. The palintiff submitted proof which, if believed at trial, could lead to the conclusion that both parties relied on an incomplete diagnosis when the settlement was made. The fact is that no where in this record prior to the time of release is there even a mention of grand mal epileptic seizures or the possibility or probability of grand mal epileptic seizures in connection with the injuries described.

Whether the plaintiff's seizures were aggravated or caused by the accident or by something else is a matter to be determined by the finder of fact at a trial on the merits.

Defendant cites *Kowalke v. Milwaukee Electric Rwy· & Light Co.*, 103 Wis. 472, 79 N.W. 762 (1899) for the proposition that where a party enters into a contract, ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense. It is argued that plaintiff's history of problems prior to the collision necessarily made her aware of her sensitive condition and the possibility of progressive symptoms and therefore the settlement included this possibility.

But this question, whether the plaintiff consciously intended to disregard the possibility that a known condition could become aggravated by reason of the collision, is a question of fact. It is not to be determined on a

motion for summary judgment. *Bryan v. Noble,* 5 Wis.2d 48, 52, 53, 92 N.W.2d 226 (1958).

Finally, the defendant objects to the plaintiff's affidavit part of which is on information and belief. Sec. 270.635, Stats. (1973), the summary judgment statute, requires at sub. (2) an affidavit "of any person who has knowledge thereof. . . ."[3] This requirement is not satisfied by an affidavit made on information and belief. *McCluskey v. Thranow,* 31 Wis.2d 245, 253–254, 142 N.W.2d 787 (1966); *Durand West, Inc. v. Milwaukee Western Bank,* 61 Wis.2d 454, 457, 213 N.W.2d 20 (1973).

In the instant case, however, the plaintiff has personal knowledge of her own symptoms. The facts stated on information and belief concerned the state of mind of the physicians who treated her and the defendants prior to execution of the release. The optimistic prognosis of the doctors at that time, however, was set forth by proof consisting of Dr. Rafiullah's deposition and Dr. Shack's report. The alleged procedural irregularities were not raised in the trial court and are therefore waived. *West Side Bank v. Marine Nat. Exchange Bank,* 37 Wis.2d 661, 666, 667, 155 N.W.2d 587 (1968); *Hasselstrom v. Rex Chainbelt, Inc.,* 50 Wis.2d 487, 492, 184 N.W.2d 902 (1971).

The issue as to mutual mistake may be tried either separately or in a bifurcated trial in the discretion of the trial court or as the parties may mutually agree.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

---

[3] *Now see,* sec. 802.08 (3), Stats. 1975.