Judith D. LILES, Plaintiff-Respondent,

v.

EMPLOYERS MUTUAL INSURANCE OF WAUSAU,
Defendant-Appellant.†

Court of Appeals

*No. 84-2261. Submitted on briefs August 16, 1985.—
Decided October 23, 1985.*
(Also reported in —— N.W.2d ——.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant, the cause was submitted on the briefs of *Philip A. Munroe,* of *Di Renzo and Bomier* of Neenah.

For the plaintiff-respondent, the cause was submitted on the briefs of *John G. Wylie* and *Richard J. Carlson* of *Patterson, Jensen, Wylie, Silton & Seifert, S.C.* of Appleton.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Employers Mutual Insurance of Wausau appeals from a judgment entered against it fol-

lowing a jury trial of a negligence action initiated by Judith Liles for injuries sustained in an automobile accident.

First, Employers claims that the trial court erred by setting aside a release executed by Liles and Employers by which Liles settled her personal injury claims. Because the trial court's finding that the release was based on a mutual mistake of fact is not clearly erroneous, we affirm. Second, Employers argues that the trial court erred by failing to submit the issue of contributory negligence as to lookout to the jury. We conclude that the facts of this case presented a jury question as to lookout and we reverse. Third, Employers claims that the trial court erroneously allowed prior trial testimony of a medical expert to be read to the jury. We agree and reverse the trial court's evidentiary ruling. Finally, Employers argues that the trial court erred in refusing to admit certain evidence and refusing to allow cross-examination on the basis of certain evidence. We also agree and additionally reverse on this ground. Therefore, we remand for a new trial on the issues of liability and damages.

Judith Liles was injured in an automobile accident on September 15, 1978, when an automobile driven by Olga Christoph struck her automobile. Liles settled her claim for personal injuries against Christoph's insurer, Employers Mutual Insurance of Wausau, by executing a release on June 13, 1979. Liles commenced this action on August 25, 1981, to set aside the release and recover damages for personal injuries.

A bifurcated trial was held. In the first phase, a trial to the court was held on the issue of setting aside the release. The trial court ordered the release voided because of a mutual mistake of fact on the part of Liles and Employers. In the second phase of trial, a jury trial was held on the personal injury claims. The special

verdict questions relating to negligence and contributory negligence were answered by the trial court in favor of Liles. The jury awarded Liles $172,500 in damages. Employers appeals.

### RELEASE TRIAL

We first consider whether the trial court erred in setting aside the release executed by Liles and Employers. The trial court found that the release was executed on a mutual mistake of fact because physicians attending Liles failed to ascertain a then-existing but unknown condition caused by the accident. Because the trial court's findings are not clearly erroneous, we affirm.

A release may be set aside if there was a mutual mistake of a past or present fact. *Krezinski v. Hay*, 77 Wis. 2d 569, 573, 253 N.W.2d 522, 524 (1977). If a diagnosis fails to ascertain a then-existing but unknown condition caused by the incident which led to the suit, and the parties relied on the diagnosis, a release may be set aside. *Id.* at 574, 253 N.W.2d at 525. Whether a release was the result of a mutual mistake presents a question of fact. *Id.* at 571, 253 N.W.2d at 523. We may reverse a trial court's determination of a question of fact only if it is clearly erroneous. Sec. 805.17(2), Stats.

Immediately after the automobile accident, Liles experienced pains in her neck. She went to a hospital and the emergency room physician indicated that she had a whiplash injury. Liles consulted a chiropractor who also told her she had a whiplash injury. On December 14, 1978, she was examined by Dr. Jerome Hagens, an orthopedic surgeon. He testified that his diagnosis after the first examination was that Liles suffered from an inflammation of the neck muscle, or whiplash. His

records indicated that Liles progressed fairly normally and noted in February 1979, that Liles could improve to a point, in three to four months, where she would be left with only minimal residual problems.

By August 1980, Liles developed new symptoms, including severe headaches, which are not common with whiplash, according to Dr. Hagens, but rather are associated with more deep-lined problems, such as damage to a disk. Dr. Hagens determined that Liles suffered from a degenerative disk disease which required surgical treatment. At trial, Dr. Hagens testified that the cause of the disk disease was the automobile accident. He also testified that cervical disk disease is an illness rather than an injury.

Employers argues that the trial court erred in setting aside the release because there was no mutual mistake of fact on the part of Liles and Employers in executing the release. We disagree.

At the time the release was executed, on June 13, 1979, Employers had access to and relied upon both Dr. Hagens's and the chiropractor's medical reports. The only diagnosis in the medical reports at that time was that Liles had a whiplash injury. Both Liles and the claims adjuster testified that at the time of executing the release they thought Liles was progressing in her recovery from the whiplash injury. Only after the release was executed was it discovered that Liles suffered from a cervical disk disease.

In finding a mutual mistake of fact, the trial court also found that the amount of consideration paid for the release was inadequate. By the terms of the release, Liles was paid $3260 and Employers agreed to pay up to $2000 for related medical expenses occurring over the following year. At the time of trial, Liles's expenses after executing the release were in excess of

$12,000. Although inadequate consideration will not in itself justify setting aside a release, it is a factor properly considered and is strong evidence tending to show a mutual mistake of fact. *Doyle v. Teasdale,* 263 Wis. 328, 345, 57 N.W.2d 381, 389 (1953).

Given the testimony cited above, we do not find the trial court's finding clearly erroneous. Liles suffered from a condition at the time of the release of which neither she nor Employers had knowledge.

Employers also challenges the trial court's finding that the automobile accident caused Liles's disk disease. It claims that the "cross-examination [of Dr. Hagens] revealed he could not state to a reasonable medical probability what caused plaintiff's cervical disk disease and subsequent surgery." Furthermore, Employers requests that we invoke the "no case" rule described in *Ianni v. Grain Dealers Mutual Insurance Co.,* 42 Wis. 2d 354, 360, 166 N.W.2d 148, 151 (1969). We refuse to do so because we do not find Dr. Hagens's testimony so contradictory as to provide no basis for finding a causal relationship between the accident and the disease.

As defined in *Ianni,* the "no case" rule is a general rule of law which provides:

> Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting with no explanation of the contradiction, and no other fact or circumstance in the case tends to show which version of the evidence is true, no case is made . . .

*Id.,* quoting 32A C.J.S. *Evidence* § 1043 (1964). Apparently, this rule has never been applied by Wisconsin's appellate courts and we hesitate to do so except in the most extreme case. We do not find this case appropriate for invoking the "no case" rule.

Dr. Hagens testified on direct examination that there was a causal relationship between the accident and the disk disease. Employers claims that on cross-examination Dr. Hagens testified that Liles's disk disease predated the accident and that Liles's participation in an aerobic dance class could have been an independent cause of the disease. We disagree with Employers's characterization of the cross-examination testimony.

Our review of the record indicates that Dr. Hagens testified that it was possible that different traumas could aggravate an existing latent condition such as the disk disease. Dr. Hagens was answering a hypothetical question, however, and nowhere does he specifically testify that Liles's disk disease predated the accident. As to whether Liles's aerobic dancing was an independent cause of her disease, Dr. Hagens testified that aerobic dancing could conceivably activate a degenerative process that was preexisting, but that the aerobic dancing was not, in his opinion, an independent cause of the disease. Although one statement on cross-examination, read in isolation, indicates that "maybe" aerobic dancing could be an independent cause of the disease, the tenor of Dr. Hagens's testimony as a whole was that the dancing was not an independent cause but rather an aggravating factor. Therefore, we do not disturb the trial court's finding that a causal relationship existed.

## NEGLIGENCE TRIAL

Having determined that the trial court properly set aside the release, we turn to the jury trial phase of the proceedings.[1] First, Employers argues that the trial

[1] Employers challenges the proof of causation at the jury trial and relies on its argument as to the finding of causation during the trial to the court. We reject the argument. A jury's verdict

court erred by failing to submit to the jury the issue of contributory negligence as to lookout. We agree and reverse.

A trial court should instruct the jury with due regard to the facts of the case. *Betchkal v. Willis,* 122 Wis. 2d 419, 423, 363 N.W.2d 248, 250 (Ct. App. 1984). It is error for the trial court to refuse to instruct on an issue which is raised by the evidence. *Lutz v. Shelby Mutual Insurance Co.,* 70 Wis. 2d 743, 750, 235 N.W.2d 426, 431 (1975). Because the trial court decided, as a matter of law, that there were insufficient facts to allow the jury to find Liles contributorily negligent, a question of law is presented. *See Walter v. Cessna Aircraft Co.,* 121 Wis. 2d 221, 231, 358 N.W.2d 816, 821 (Ct. App. 1984). We therefore owe no deference to the trial court's conclusion. *Id.*

The trial court included a question on the special verdict inquiring as to the negligence of Liles. The question was answered "no" as a matter of law by the trial court "because there is no testimony in this record from which any negligence can be attributed to the plaintiff, Judith Liles." In response to Employers's objection, the trial court stated that "[t]he only issue would be lookout, and the only testimony in the case is that she saw the other car, so the negligence wouldn't go to that . . . ."

Liles testified that she was involved in an accident in the intersection of Third Street and Hewitt Street in the city of Neenah. Third Street is an arterial roadway and traffic traveling on Hewitt is regulated by a stop

will not be set aside if there is any credible evidence to support it. *Fehring v. Republic Insurance Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). Based upon our discussion of the causation issue as it was raised during the first phase of trial, we find credible evidence to support the jury's finding.

sign at the intersection. Liles testified that it was a sunny day and there were no obstructions to her view of the intersection. She was driving south on Third Street at 15–20 m.p.h. as she approached the intersection. Liles testified that she was aware of two automobiles traveling west on Hewitt. She also testified that she knew traffic on Hewitt had to stop and that the automobiles she observed approached the intersection at a rate of speed that indicated they were going to stop.

Liles did not know, however, if the automobiles came to a complete stop before entering the intersection. She testified that she saw them approaching, looked away from them and proceeded through the intersection without making a further observation, relying on her right to assume the automobiles would stop. Liles was struck in the left rear of her vehicle by the second automobile she saw approaching the intersection.

The operator of a vehicle proceeding with a right of way on an arterial roadway has a right to assume that those approaching on intersecting roadways will stop before entering the intersection. *Schmiedeck v. Gerard*, 42 Wis. 2d 135, 139, 166 N.W.2d 136, 138 (1969). Although the operator has the right of way, proper lookout must be maintained. *Id.; Henden v. Passow*, 39 Wis. 2d 119, 123, 158 N.W.2d 551, 553 (1968). There are two aspects to the duty of lookout: first, a duty of observation and second, a duty to exercise reasonable judgment in calculating the position and movement of other vehicles. *Gleason v. Gillihan*, 32 Wis. 2d 50, 55, 145 N.W. 2d 90, 92 (1966).

Under the facts of this case, we are persuaded that a jury question existed as to whether Liles failed to maintain proper lookout. While it is undisputed that

Liles made an initial observation of the automobiles approaching the intersection, it may be that additional observations were necessary to maintain proper lookout. *See, e.g., Henden* at 122–24, 158 N.W.2d at 552–53; *Ashley v. American Automobile Insurance Co.,* 19 Wis. 2d 17, 20–22, 119 N.W.2d 359, 361–62 (1963). Liles never made a further observation to see if the automobiles stopped at the intersection. Under the circumstances, a jury question existed as to whether a more efficient lookout was required. We therefore conclude that the trial court erred by refusing to submit the issue of Liles's negligence as to lookout to the jury. We reverse and remand for a new trial as to liability.

Employers also argues that the trial court committed evidentiary errors which require a new trial.[2] On appeal, the question is not whether this court would have admitted the evidence in question, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225, 228 (1979).

First, Employers claims the trial court erred by admitting, at the jury trial, Dr. Hagens's testimony from the release phase of trial. We agree.

During the jury trial, Employers objected to the admission of Dr. Hagens's testimony from the release phase of trial on the grounds that the testimony was inadmissible hearsay. The trial court equated Dr. Hagens's prior testimony with deposition testimony under sec. 804.07(1) (c), Stats. Because sufficient guarantees of testimonial trustworthiness existed, the trial court then admitted such prior testimony. Thus, although the

---

[2] Since our previous holding requires a retrial, we are not necessarily required to address Employers's remaining issues. However, because these evidentiary questions are likely to recur at the retrial, we choose to address them.

trial court recognized the distinction between Dr. Hagens's prior testimony in the release phase of the trial and testimony given via deposition, the prior testimony was received pursuant to the deposition statute, sec. 804.07(1)(c), and to the exclusion of the hearsay statute dealing with former testimony, sec. 908.045(1), Stats. We conclude this was error. Despite the similarities between former testimony and deposition testimony, the statutes carve out different criteria for their admissibility. Employers correctly points out that Dr. Hagens's prior trial testimony is admissible under sec. 908.045(1) only if the doctor had been shown to be unavailable. Such showing was not made in this case.

Liles next argues that Dr. Hagens's prior testimony was admissible under the "catchall" provisions of sec. 908.03(24), Stats. In fact, in admitting Dr. Hagens's prior testimony, the trial court found that "[a]ll the safeguards were there. The doctor was cross-examined by counsel in those proceedings. It related to the same patient, the same case, so testimonial worthiness, trustworthiness is there. Testimony under oath." While we do not disagree with these findings by the trial court, they nonetheless do not serve to bring Dr. Hagens's prior testimony within any recognized exception to the hearsay rule.

Section 908.045, Stats., addresses the admissibility of prior trial testimony and requires that the declarant be unavailable.[3] Here there is no showing that Dr. Hagens was unavailable. Liles's argument would undercut the purpose of sec. 908.045(1), governing the admissibility of former testimony, and would render it meaningless and surplusage. Such interpretations are to be avoided.

---

[3] Generally, former testimony is not admissible unless the declarant is unavailable because the opportunity of the trier of fact to observe the demeanor of the witness gives depth and meaning to the testimony. *Green v. State*, 75 Wis. 2d 631, 640, 250 N.W.2d 305, 309, *cert. denied*, 434 U.S. 841 (1977).

504

*See Johnson v. State*, 76 Wis. 2d 672, 676, 251 N.W.2d 834, 836 (1977) ; *State v. Ross*, 73 Wis. 2d 1, 5, 242 N.W. 2d 210, 212 (1976).

Furthermore, sec. 908.045(1), Stats., governing the admissibility of former testimony is the more specific statute dealing with this fact situation than sec. 908.03 (24), Stats., the catchall exception to the hearsay rule where unavailability need not be demonstrated. Traditional rules of statutory construction require us to apply the specific statute over the general. *See State ex rel. Westbrook v. City of New Berlin*, 120 Wis. 2d 256, 261, 354 N.W.2d 206, 209 (Ct. App. 1984) ; *State v. Kruse*, 101 Wis. 2d 387, 393, 305 N.W.2d 85, 88 (1981).

Thus, Dr. Hagens's prior testimony does not qualify under any of the hearsay exceptions relied upon by the trial court or asserted by Liles. Therefore, the admission of the prior testimony was error and we additionally reverse on this added ground.

Finally, Employers argues that the trial court erred by refusing to admit a public document and a letter by which Employers sought to impeach Liles's expert who testified about Liles's loss of future earning capacity. We agree that the trial court erred by refusing to admit this evidence. Because we find the error prejudicial, we additionally reverse and remand on this ground.

The trial court refused to allow into evidence a report issued by the Arizona Department of Health Services and a letter written by a supervisor of a research institution. Employers attempted to introduce this evidence during its cross-examination of John McKay, a vocational rehabilitation counselor who testified that Liles had sustained a twenty-five percent permanent loss of earning capacity as a result of her neck injury. McKay further testified that Liles could suffer a $144,-000 loss of future earning capacity. In part, McKay's testimony was based on the fact that generally there

is a shortage of nursing positions. Both the report and the letter suggest that there is a shortage of nurses rather than a shortage of positions in Arizona, the state in which Liles resided at the time of trial. The jury awarded Liles $10,000 for loss of future earning capacity.

We agree with Employers's argument that the report issued by the Arizona Department of Health Services was admissible under sec. 909.02(5), Stats. This statute provides that extrinsic evidence of authenticity is not a condition precedent to admissibility with respect to "[b]ooks, pamphlets or other publications purporting to be issued by public authority."

The title page to the report in question indicates that it is published by the Arizona Department of Health Services. The trial court refused to admit the report under sec. 909.02(5), Stats., because the document was not one purporting to be issued by the State of Wisconsin or the United States and because the report was not authenticated. The statute contains no requirement that the document be published by the State of Wisconsin or the United States. The statute only requires that the document purport to be issued by public authority. Furthermore, the statute specifically indicates that such a document is self-authenticating. Because the trial court applied an erroneous legal standard, it abused its discretion by refusing to admit the report into evidence. *See State v. City of La Crosse*, 120 Wis. 2d 263, 268, 354 N.W.2d 738, 740 (Ct. App. 1984).

The trial court also refused to allow cross-examination on the basis of a letter written by a supervisor of a research institute. The letter indicated that Arizona hospitals had been aggressively recruiting nurses over the past eight years. Testifying during an offer of proof, McKay indicated that information contained in

the letter represented the type of information he received and customarily relied upon in arriving at an opinion as to loss of future earning capacity. The trial court refused to allow Employers the opportunity to cross-examine McKay, on the basis of the letter, to inquire whether such information would alter his opinion. Employers argues that cross-examination based on the information contained in the letter was permissible under sec. 907.03, Stats. We agree.

Section 907.03, Stats., provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

This statute allows McKay to base an opinion on information which may be inadmissible but which is "of a type reasonably relied upon by experts in the particular field." Employers, therefore, could properly request McKay to give an opinion based on such facts presented to him at trial, even though those facts may have been inadmissible. We conclude that the trial court erred by refusing to allow cross-examination on the basis of the information in the letter. Because both this error and the trial court's error as to the admission of the report were prejudicial to Employers in regard to the issue of loss of future earnings, we additionally reverse and remand for a new trial on these grounds.

We, therefore, remand for a new trial on the issues of liability and damages.[4]

---

[4] In light of the retrial mandated by our holdings, we are not required to address Employers's claims that the damages are not supported by the credible evidence and that the damages are excessive.

*By the Court.*—Judgment affirmed in part, reversed in part and remanded.

As to Employers's challenge that the evidence was insufficient to establish a causal relationship between the accident and the injuries, we reject this argument for the reasons set forth in the portion of this opinion which discusses the release phase of the trial.